J-A05020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| STRAUSSER ENTERPRISES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEGAL AND MOREL, INC., SEGAL AND MOREL AT FORKS TOWNSHIP II, LLC, SEGAL AND MOREL AT FORKS TOWNSHIP III, LLC, SEGAL AND MOREL AT FORKS TOWNSHIP IV, LLC AND KENNETH SEGAL | |
| Appellants | No. 176 EDA 2015 |

Appeal from the Order December 8, 2014
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C48CV20104518

---------------------------------------------------------------------------------

| STRAUSSER ENTERPRISES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v.l | |
| SEGAL AND MOREL, INC., SEGAL AND MOREL AT FORKS TOWNSHIP II, LLC, SEGAL AND MOREL AT FORKS TOWNSHIP III, LLC, SEGAL AND MOREL AT FORKS TOWNSHIP IV, LLC AND KENNETH SEGAL | |
| Appellants | No. 761 EDA 2015 |

Appeal from the Order Entered February 6, 2015
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C48CV20104518

---------------------------------------------------------------------------------

J-A05020-16

| | |
|---|---|
| STRAUSSER ENTERPRISES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEGAL AND MOREL, INC, SEGAL AND MOREL AT FORK TOWNSHIP II, LLC, SEGAL AND MOREL AT FORK TOWNSHIP III,LLC, SEGAL AND MOREL AT FORK TOWNSHIP IV,LLC, AND KENNETH SEGAL | |
| Appellants | No. 1251 EDA 2015 |

Appeal from the Judgment Entered March 20, 2015
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C48CV20104518

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY OTT, J.:                          **FILED JULY 06, 2016**

In these consolidated appeals, Segal and Morel, Inc., Segal and Morel at Fork Township II, LLC, Segal and Morel at Fork Township III, LLC, Segal and Morel at Fork Township IV, LLC, and Kenneth Segal (collectively "Segal"), appeal from the orders entered December 8, 2014, February 6, 2015, and the judgment entered March 20, 2015, in the Northampton County Court of Common Pleas, confirming an arbitration award entered in favor of Strausser Enterprises, Inc. ("Strausser"), and entering judgment on

_____

* Former Justice specially assigned to the Superior Court.

- 2 -

that award.[1]  On appeal, Segal contends the trial court erred when it:  (1) determined the arbitration panel rendered a valid award despite the fact that the decision was not unanimous, and the panel failed to resolve all issues; (2) improperly limited the scope of the arbitration panel on remand from a prior decision of this Court; (3) denied Segal's petition to vacate the award when the arbitration panel, on remand, failed to conduct a hearing, or deliberate on all issues; and (4) denied Segal's request to permit discovery and conduct a hearing on the petition to vacate.[2]  For the reasons that follow, we affirm the judgment entered at Docket No. 1251 EDA 2015, and dismiss, as moot, the appeals docketed at Nos. 176 EDA 2015 and 761 EDA 2015.

The factual and procedural history underlying this appeal were aptly summarized by a panel of this Court in a prior appeal:

> The pertinent background underlying this matter can be summarized as follows.  "The parties to this action ... were at one time engaged in a number of agreements relative to the development of real estate in Northampton County."[3]  The

---

[1] The appeals were consolidated by this Court for disposition.  **See** Order, 6/23/2015.  As will be discussed *infra*, the appealable, final order was the March 20, 2015, entering judgment on the arbitration award.

[2] We have consolidated and reordered Segal's issues on appeal for purposes of disposition.

[3] The arbitration panel's Majority Opinion, issued September 26, 2012, explained the parties' background as follows:

> [Strausser] is an owner and developer of certain real estate located in Forks Township, Pennsylvania known at The

*(Footnote Continued Next Page)*

parties agree that the contract which governs their relationship requires them to submit their disputes to common law arbitration.

On May 6, 2010, Strausser filed a "Petition to Compel the Appointment of an Arbitrator to Serve as if Appointed by [Segal]." On May 28, 2010, the trial court ordered Thomas Wallitsch to serve as an arbitrator as if [Segal] appointed him. [Segal] sought reconsideration of the May 28, 2010 order. On November 9, 2010, the trial court issued an order in response to [Segal's] petition for reconsideration, directing [Segal] to name an arbitrator to hear Strausser's breach of contract claims.

Thereafter, Strausser filed an arbitration complaint. Strausser included in this complaint a request for counsel fees that

*(Footnote Continued)* ⸻

Riverview Estates and The Riverview Country Club ("Riverview"). Segal and Morel, Inc. ("Segal, Inc.") is a builder and developer. Segal and Morel at Forks Township II, LLC [], Segal and Morel at Forks Township III, LLC [], Segal and Morel at Forks Township IV, LLC [] (Collectively "the Segal Entities) are single purpose Pennsylvania limited liability companies. Kenneth Segal ("Mr. Segal" is an owner of, and the president of, Segal, Inc. Mr. Segal is also an owner of, and the managing member of, [the Segal Entities]. Mr. Segal controls all of the Segal Entities.

Riverview has been subdivided into a number of different parcels to be developed, in phases, into various types of residential homes such as single family dwelling, townhouses and condominiums, as well as a golf course and country club. [Strausser] entered into a series of agreements with Segal, Inc. to sell off some phases of the project, while retaining certain other phases. … Segal, Inc. assigned its rights under the [] agreements to [the Segal Entities].

Under the Agreements of [S]ale, [Strausser] was to perform all of the site work (meaning all of the work that is on or under the ground including sanitary sewer, storm sewer, water lines, utilities, curbs and topsoil). Segal was to do all of the above-ground, or "vertical" construction.

Majority Opinion, 9/26/2012, at 1-2 (record citaitons omitted). The claims before the arbitration panel arose from the parties' agreements of sale.

Strausser incurred in litigating its petition to compel arbitration. [Segal] refer[s] to the arbitration panel that considered this complaint as "the Redding Panel." It also is important to note that, prior to the arbitration proceedings in front of the Redding Panel, the parties litigated several issues in front of a different arbitration panel. [Segal] refer[s] to this initial panel of arbitrators as "the Walters Panel."[4]

The Redding Panel conducted hearings in late February and early March of 2012. In a document dated September 26, 2012, two of the three arbitrators ruled in favor of Strausser (Majority Decision). In addition to awarding Strausser monetary damages, the Majority Decision stated, *inter alia,* that it included "[a]n order [*sic*] for a subsequent hearing to determine the amount of [Strausser's] counsel fee award[.]" The Majority Decision also noted, "In the event that the panel determines that it needs [Segal's] profit/lot to determine damages, the parties have agreed to present that evidence at a later phase of this proceeding...."

The Majority Decision was accompanied by an opinion in support thereof (Majority Opinion). Regarding Strausser's claim for counsel fees, the Majority Opinion stated that Strausser prevailed with respect to its petition to compel and the litigation in front of the Redding Panel. The Majority Opinion, therefore, concluded that, pursuant to the parties' agreement, Strausser is entitled to reimbursement of its counsel fees. The Majority Opinion asserted, "We will hold a subsequent hearing to determine the amount of the counsel fee award."

_____

[4] The Walters Panel found in favor of Segal in its claims against Strausser and awarded Segal more than $1,000,000. **See** Praecipe to Enter Judgment, 4/24/2008; Praecipe to Enter Judgment, 3/23/2009. The decision of the Walters Panel was joined by both Segal's named arbitrator, Joel Scheer, Esq., and the neutral arbitrator, Thomas L. Walters, Esq. Strausser's named arbitrator, Joseph Corpora III, Esq., dissented from all claims denying Strausser relief and awarding Segal monetary damages. **See** Arbitration Opinion, 12/11/2007; Arbitration Opinion, 4/16/2008. Likewise, Scheer dissented with regard to a claim denying Segal damages. **Id.** Despite the fact that the decision was not unanimous, Segal praeciped to enter judgment on the award.

The lone dissenting arbitrator, Joel M. S[c]heer, did not sign the Majority Decision.[5] Instead, he authored a dissenting opinion dated October 10, 2012 (Dissenting Opinion).

On October 26, 2012, [Segal] filed a "Motion to Stay and Setting of Date for Filing of Petition to Vacate Arbitration Award." In this motion, [Segal] acknowledged that they had thirty days from the date the arbitrators' award became final in order to file a petition to vacate the award and, thus, challenge the award. [Segal] averred that they received copies of the Majority Decision, the Majority Opinion, and the Dissenting Opinion on October 24, 2012. [Segal] argued that the earliest deadline to file a petition to vacate was November 9, 2012, which was thirty days from the date Mr. S[c]heer signed the Dissenting Opinion.

On November 5, 2012, Strausser filed a petition to confirm the arbitration award. The following day, the trial court denied [Segal's] "Motion to Stay and Setting of Date for Filing of Petition to Vacate Arbitration Award." [] Segal [then] filed a "Petition to Vacate Majority [Decision] and Opinion, and to Preclude Entry of Judgment Pending Resolution of Petition." …

[Segal also] filed a response to Strausser's petition to confirm the arbitration award. Therein, [Segal] averred, *inter alia,* that the trial court could not confirm the Majority Decision because it does not constitute a final award for purposes of common law arbitration. In this regard, [Segal] highlighted that the Majority Decision did not dispose of Strausser's claim for counsel fees and that the Majority Decision noted that the parties had agreed to present evidence regarding damages at a later proceeding.

On November 21, 2012, Strausser filed a motion to strike [Segal's] allegedly untimely-filed petition to vacate the arbitration award. [Thereafter, Segal filed a motion requesting the trial court certify its order for appeal. The court granted Segal's motion. However, in February of 2013, this Court denied Segal's petition for permission to appeal.]

---

[5] We note that Segal's appointee, Scheer, was the only arbitrator to serve on both the Walters and Redding Panels.

On April 19, 2013, the trial court entered an order [which] granted Strausser's motion [] to strike [Segal's] petition to vacate and, thus, struck the petition. Next, the court granted Strausser's petition to confirm the arbitration award. As to its action in this regard, the court concluded, *inter alia,* that, because Strausser's claim for counsel fees is ancillary "to the issues in the case," … the unresolved nature of the claim does not impact the finality of the arbitrators' decision. Lastly, the court directed the prothonotary to enter a judgment in conformity with this order.

On April 22, 2013, Strausser filed a "Praecipe to Enter Judgment in Conformity with the Court's April 19, 2013 Order." That same day, judgment was entered in favor of Strausser in the amount of $15,699,721.00. [Segal] timely filed a notice of appeal.

*Strausser Enterprises, Inc. v. Segal & Morel, Inc.*, 89 A.3d 292, 293-295 (Pa. Super. 2014) (internal citations and footnotes omitted).

On appeal, a panel of this Court concluded "the trial court lacked the authority to enter an order confirming the Redding Panel's decision and to enter judgment in conformity with that order." *Id.* at 300. Specifically, the panel determined "Strausser's claim for counsel fees [was] unresolved." *Id.* at 298. The panel opined:

[T]he Redding Panel concluded that Strausser is entitled to counsel fees in connection with Strausser's successful litigation of its petition to compel and its arbitration claims. The Redding Panel, however, has yet to determine the amount of fees to which Strausser is entitled and clearly has indicated that an additional hearing is needed in order to reach this determination. In order to set the amount of fees due to Strausser, the Redding Panel certainly will have to make factual determinations and possibly will have to rule on legal issues. Moreover, because the Redding Panel only concluded that Strausser is entitled to counsel fees in connection with Strausser's successful litigation of its petition to compel and its arbitration claims, we reject the trial court's assertion that "the award of counsel fees in the instant case clearly cannot be ascertained until the case is

complete, thereby necessitating that the award be confirmed and the proceedings closed prior thereto."

***Id.***[6]   Accordingly, the panel vacated both the order confirming the arbitration award and the judgment entered upon the award, and remanded the matter to the trial court. ***Id.*** at 300. The panel explicitly directed: "On remand, the trial court shall remand to the Redding Panel in order to allow the panel to complete its work." ***Id.***

Upon remand, Judge Craig Dalley, who had presided over the matter since 2012, disqualified himself *sua sponte*, and the case was reassigned to President Judge Stephen Baratta. ***See*** Order, 5/21/2014. On May 23, 2014, the trial court entered an order stating, "this matter is hereby REMANDED to the arbitration panel comprised of Edward Redding, Esquire, Walter Weir[,] Jr., Esquire and Joel Scheer, Esquire for disposition of [Strausser's] outstanding claim for attorneys' fees." Order, 5/23/2014. Segal then sought clarification of the court's May 23rd order, and requested the court appoint new arbitrators. On June 12, 2014, the trial court entered the following order, clarifying its May 23rd order:

> This matter is hereby REMANDED to the arbitration panel comprised of Edward Redding, Esquire, Walter Weir[,] Jr., Esquire and Joel Scheer, Esquire ("the Redding Panel") "in order to allow the panel to complete its work," consistent with the limited directives contained in the Superior Court of Pennsylvania's Order of April 1, 2014.

---

[6] The panel also rejected the trial court's assertion that the issue of counsel fees was an ancillary claim that did not affect the order's appealability. ***Id.*** at 299.

Order, 6/12/2014.

However, before the matter was remanded to the Redding Panel, Strausser wrote to the panel and withdrew its outstanding claim for attorneys' fees. Segal responded to Strausser's letter by requesting a conference, and stating its position that there were other outstanding issues for the panel to resolve. However, the Redding Panel did not respond to Segal's request, and on August 4, 2014, the Majority issued a supplemental opinion, concluding that, after Strausser withdrew its claim for counsel fees, "all matters submitted by the parties have been decided … these proceeding are concluded and [its] earlier Award in the amount of $15,699,721 stands as the Final Award of this Panel." Supplemental Opinion, August 4, 2014, at 5. Arbitrator Scheer issued a supplemental dissenting opinion advocating that "this entire matter should have been remanded to the Walters Panel[.]" Dissent to Supplemental Opinion, 8/8/2014, at 3.

On September 2, 2014, Segal filed a petition to vacate the arbitration award, followed by an amended petition on November 3, 2014. The trial court conducted a hearing on November 7, 2014, and, on December 8, 2014, entered an order denying all of Segal's outstanding motions. Thereafter, on December 30, 2014, Strausser filed a petition to reinstate confirmation of and enter judgment on the arbitration award. On January 7, 2015, Segal filed an appeal from the trial court's December 8, 2014, order. *See* Docket No. 176 EDA 2015.

On January 20, 2015, Segal filed a petition in opposition to Strausser's request that the trial court confirm the supplemental majority arbitration award. However, on February 6, 2015, the trial court entered an order, reaffirming that its December 8, 2014, order "was intended to be a final Order making this matter [ripe] for review by the Superior Court. The intent of our Order was that Judge Dally's original confirmation was not disturb[ed] under the Rule of Coordinate Jurisdiction." Order, 2/6/2015. Segal filed a timely appeal of that order. *See* Docket No. 761 EDA 2015.

Thereafter, on March 20, 2015, Strausser filed a *praecipe* for the entry of judgment on the arbitration award. Judgment was entered on the docket, and a third notice of appeal followed.[7] *See* Docket No. 1251 EDA 2015.

In its first issue on appeal, Segal argues the trial court erred in determining the Redding Panel entered a valid arbitration "award." Specifically, Segal asserts that the award is not enforceable because it was

---

[7] We note that the third appeal, from the March 20, 2015, entry of judgment, is the proper appeal to preserve all of Segal's claims on appeal. Therefore, we dismiss the appeals at Docket Nos. 176 EDA 2015 and 761 EDA 2015, as they were not final orders, and the issues are now ripe for review under the appeal at Docket No. 1251 EDA 2015. *See Seay v. Prudential Prop. & Cas. Ins. Co., a Subsidiary of Prudential Ins.*, 543 A.2d 1166, 1168 (Pa. Super. 1988) (holding the 30-day appeal period begins to run from the entry of judgment on an arbitration award, and not from the entry of the order confirming the award), *appeal dismissed as improvidently granted*, 565 A.2d 159 (Pa. 1989).

not rendered unanimously, and because the Redding Panel did not resolve all issues on remand.

As a panel of this Court stated in the earlier appeal:

> Whether the arbitrators' decision constitutes an award for purposes of common law arbitration presents a question of law. "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision."

***Strausser***, ***supra***, 89 A.3d at 297 (internal citations omitted).

In the present case, there is no question the parties agreed to settle their disputes through common law arbitration. ***See Levy v. Lenenberg***, 795 A.2d 419, 422 (Pa. Super. 2002) ("An agreement to arbitrate a dispute that does not state that the Uniform Arbitration Act applies is conclusively presumed to be an agreement to common law arbitration."). The long-standing general rule of common law arbitration is that the arbitrators' decision must be unanimous.[8] ***See Weaver v. Powel***, 23 A. 1070 (Pa. 1892); ***Sukonik v. Shapiro***, 5 A.2d 108 (Pa. 1939). Nevertheless, our courts have consistently recognized an exception to this general rule when the parties agree, by "express terms or by fair implication" to be bound by a majority decision. ***Weaver***, ***supra***, 23 A. at 1070. ***See Rosenbaum v.***

---

[8] Conversely, when proceeding under statutory arbitration, the general rule is that the parties agree to a majority decision, "unless otherwise prescribed by the agreement or provided [in the Arbitration Act]." 42 Pa.C.S. § 7306. ***See also*** 42 Pa.C.S. § 7307(a)(5).

***Drucker***, 31 A.2d 117, 118 (Pa. 1943) ("The parties may agree that the award may be made by a majority of the arbitrators. Such intent may be gathered from the very fact of submission and from the attendant circumstances.").

The relevant arbitration clause in the present case provided as follows:

> In the event of any dispute arising under or from this or any previous Addendum or the Agreements of Sale between the parties, then the parties agree that any such dispute shall be subtmitted to binding arbitration. **Each party shall name an arbitrator, the two of whom shall name the third arbitrator, and a hearing shall be held promptly thereafter. Their decisions shall be final and binding and may be entered as a judgment in the Court of Common Please (sic) of Northampton County.** In the event that any party fails or refuses to name an arbitrator after five days notice to do so, then either party shall have the immediate right to apply to said Court for the appointment of such arbitrator. The arbitrator shall have the right to award counsel fees to the prevailing party.

Petition to Compel the Appointment of an Arbitrator to Serve as if Appointed by the Respondents, 5/6/2010, Exhibit D, Third Addendum to Agreements of Sale dated July 5, 2001 and April 25, 2003, at ¶ 24 (emphasis supplied) (hereinafter "Arbitration Clause").

Segal argues that because the arbitration clause at issue does not indicate the parties' intention to be bound by a majority decision, the general rule requiring unanimity applies. ***See*** Segal's Brief at 30. Segal claims the manner in which the arbitrators were chosen in the present case is the same as in ***Weaver***, ***supra***, where the Supreme Court reversed an

arbitration judgment entered upon a non-unanimous decision. ***See id.*** at 30-31.

Moreover, Segal contends that nothing in the parties' conduct implied their intent to be bound by a majority decision. To the extent the trial court relied on Segal's acquiescence to a non-unanimous decision issued by the prior arbitration panel, the "Walters Panel," Segal claims the court erred because (1) only one of the named Segal entities herein was involved in the prior arbitration proceedings, and (2) Segal had no reason to challenge the Walters Panel award because the ruling was issued in its favor. ***See id.*** at 32, 34. Furthermore, Segal asserts the trial court also erred in considering the parties' actions during the Walters Panel because the trial court had already determined that the Walters Panel "was extinguished and therefore had 'no authority with respect to this case[.]'" ***Id.*** at 33, *quoting* Trial Court Opinion, 11/9/2010, at 7.

The trial court succinctly disposed of this claim as follows:

Given the terms of the parties' arbitration clause, and the circumstances, inclusive of their prior course of conduct with regard to the clause, the Court finds that it made a fair inference as to the parties' consent to be bound by a majority award.

Order of Court, 12/13/2012, at 11.

We agree with the conclusion of the trial court that the terms of the parties' arbitration clause, as well as their conduct, evidenced an intent to be bound by a majority decision. First, we note the arbitration clause at issue provided that each party would name an arbitrator, and those two

- 13 -

arbitrators would choose a third arbitrator. **See** Arbitration Clause. While this was the same procedure the Supreme Court determined required a unanimous ruling in **Weaver**, **supra**,[9] subsequent case law has reflected a more relaxed view of the unanimity requirement.

In **Sukonik**, **supra**, the Supreme Court again recognized that, generally, common law arbitration awards must be unanimous, but found evidence which demonstrated the parties agreed "by fair implication" to be bound by a majority award. **Sukonik**, **supra**, 5 A.2d at 109. The Court cited the arbitration agreement, which provided, in pertinent part, that disputes "shall be submitted to a committee of three parties, one selected by each of the parties to this agreement and a third *disinterested* party selected by the two disputees." **Id.** (citation omitted and emphasis in original). In that case, the two arbitrators selected by the parties were their attorneys, and had already attempted to settle the dispute to no avail. **Id.** The Court stated, "Clearly, therefore, the submission must have contemplated an award by only two of the arbitrators." **Id.** at 110.

In **Rosenbaum**, **supra**, an issue was initially submitted to an arbitration panel, which decided the controversy. **Rosenbaum**, **supra**, 31 A.2d at 118. However, when the parties failed to abide by the panel's

_____

[9] **See Weaver**, **supra**, at 1071 ("In our case each party named an arbitrator, the two persons named were to select a third, and the arbitrators thus chosen were to view the premises, and make an award under their hands and seals.").

directives, the matter was referred back to the same arbitrators. *Id.* The losing party later complained because the second ruling was signed by only two of the three arbitrators. However, the Supreme Court concluded: "[i]t is manifest that these arbitrators were originally named, and thereafter renamed, not only because of their peculiar knowledge [of the issues involved], but because certain of the arbitrators were obviously partisan in their views." *Id.* Therefore, the Court found "it is a fair implication that the parties agreed and understood that any award could be made by a majority of the arbitrators." *Id.*

Here, we find no reason to disagree with the trial court's determination that the parties agreed, by fair implication, to be bound by a majority award. First, the procedure used to appoint the arbitration panel herein - where each party named an arbitrator and the two named arbitrators choose a third - carries with it an implication that arbitrators named by each party will be partisan and the third arbitrator will be neutral. We recognize that the Supreme Court in *Weaver* came to a different conclusion. However, as noted above, that conclusion appears to have been modified by the Court's subsequent decisions in *Sukonik* and *Rosenbaum*.[10]

_____

[10] Segal claims that the Legislature's 1982 amendments to the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7301 *et seq.*, "manifests the continuing requirement of a unanimous decision for common law arbitration awards[.]" Segal's Brief at 26. We do not disagree. Sections 7306 and 7307(a)(5) of the Act specifically provide for majority decisions in statutory arbitrations, but were not made applicable to common law arbitrations. *See* 42 Pa.C.S. §
*(Footnote Continued Next Page)*

Moreover, in the present case, unlike in **Weaver**, we find that the parties' conduct demonstrated by "fair implication" that they intended to be bound by a majority award. **Sukonik**, **supra**, at 109. Significantly, we note the prior arbitration award, rendered by the Walters Panel **in favor of Segal**, was joined by only two of the three arbitrators – the neutral arbitrator and the arbitrator named by Segal. Segal did not hesitate to confirm and enter judgment on that award. Although Segal argues the prior arbitration involved different parties, we find this contention hollow. The Segal entities named in that dispute were Segal and Morel, Inc. and Segal and Morel at Forks Township VII, LLC. As explained in the Majority Opinion, Segal and Morel, Inc. is the parent corporation of a number of single purpose limited liability companies created for the development of The Riverview Estates in Forks Township, including Segal and Morel at Forks Township VII, LLC, which was named in the prior dispute, and Segal and Morel at Forks Township II, LLC, Segal and Morel at Forks Township III, LLC, Segal and Morel at Forks Township IV, LLC, which are named in the present dispute. **See** Majority Opinion, 9/26/2012, at 1. Furthermore, Kenneth Segal is an owner and the president of all the aforementioned corporations.

_(Footnote Continued)_ _____

7342(a). However, as will be discussed _infra_, we find, in the present case the parties agreed by "fair implication" that they intended to be bound by a majority award. **See Rosenbaum**, **supra**.

Therefore, we find the parties involved in this dispute are in privity with those involved in the prior dispute.[11]

Segal contends, however, that we should not consider anything that occurred during the Walters Panel proceedings for two reasons. First, it emphasizes the trial court determined "the Walters Panel was *functus officio*—i.e., the Panel was extinguished and therefore had '*no authority* with respect to this case[.]'" Segal's Brief at 33 (emphasis in original and citation omitted). Second, Segal claims that even if we could consider the prior proceedings, Segal could not have challenged the non-unanimous award issued by the Walters Panel because it was not an aggrieved party. *Id.* at 34. We disagree with both of Segal's contentions.

Segal's citation to the trial court's statement that the Walters Panel had "no authority" in this case is taken out of context. The trial court made this comment in a November 9, 2010, opinion which was issued in response to Segal's motion for reconsideration of the court's May 2010 order naming Wallitsch to serve as Segal's designated arbitrator in the Redding Panel proceedings. Segal had claimed the first arbitration panel, the Walters

---

[11] Segal complains that Kenneth Segal should not have been found jointly and severally liable because he was not a party to any arbitration agreement with Strausser. Segal's Brief at 32. However, Kenneth Segal's liability, or lack thereof, was an issue for the arbitration panel. As we will discuss, *infra*, this Court's review of a common law arbitration award is extremely limited. **See** 42 Pa.C.S. § 7341.

Panel, retained jurisdiction over the issues presented. Trial Court Opinion, 11/9/2010, at 4. The court disagreed, finding the Walters Panel had issued a final award and was "*functus officio*." *Id.* at 5-6. However, because it was "unclear whether [Segal] in fact received notice" of Strausser's petition to appoint an arbitrator, the court granted Segal's motion for reconsideration, and directed it to appoint an arbitrator within five days. *Id.* at 4. Segal thereafter, once again, named Scheer to arbitrate the claims arising from the parties' land development project. The trial court correctly determined the Walters Panel was exhausted, and that the new claims should be presented to a new arbitration panel. It did not comment on whether the parties' actions during the Walters Panel arbitration were relevant in determining whether the parties agreed to accept a non-unanimous ruling.

Furthermore, with respect to Segal's complaint that it could not have challenged the non-unanimous award rendered by the Walters Panel because it was not an aggrieved party, we find this argument specious. The Walters Panel did not find for Segal on all its claims. Specifically, the panel denied Segal's request for reimbursement of a $13,000 contribution it had made to the Homeowners Association. *See* Arbitration Opinion, 12/11/2007, at 13-14. The Walters Panel Majority determined this amount was not recoverable, and Segal's named arbitrator, Scheer, dissented on this issue. *See* Dissent, 12/11/2007. Therefore, Segal was an "aggrieved party" with regard to this claim for relief, and could have challenged the arbitrator's decision. Moreover, if Segal believed a non-unanimous decision was not

- 18 -

permitted under the parties' arbitration clause, it could have asserted that the arbitration process was tainted by an "irregularity." 42 Pa.C.S. § 7341. Its failure to do so supports our conclusion that the parties' actions support the fair implication that they intended to be bound by a majority decision.

Consequently, while the issues raised during the present proceedings were distinct from those raised during the Walters Panel, the claims arose from the same land development project, and were subject to the same arbitration clause. Furthermore, Segal named the **same arbitrator**, who had ruled in its favor during the Walters Panel, to the Redding Panel. Accordingly, we find no basis to disturb the determination of the trial court that the parties agreed, by "fair implication," to be bound by a non-unanimous decision.

Segal also asserts the Redding Panel's award was not a final award because the panel failed to resolve all issues. Segal asserts it wrote to the Redding Panel twice after remand and requested a conference "to discuss various issues related to the arbitration." Segal's Brief at 36. However, the panel never responded to its request, but rather, on August 11, 2014, issued the supplemental opinion and dissent.

It is well-established that "the *sine qua non* of an award is its finality in disposing of all the matters submitted by the parties to the arbitrator for his or her decision." ***Fastuca v. L.W. Molnar & Associates***, 10 A.3d 1230, 1240 (Pa. 2011). However, the only unresolved issue Segal identifies in its brief is a request for counsel fees it incurred "in litigating [Strausser's]

- 19 -

unsuccessful attempt to confirm the Majority Order and Opinion as an 'award.'"[12]  **Id.  See Strausser**, **supra**, 89 A.3d at 300.  Segal bases this request upon the following language in the arbitration provision:  "The arbitrator shall have the right to award counsel fees to the prevailing party."  Arbitration Clause.  Segal further asserts this was not a new claim, because it had requested counsel fees, in addition to judgment in its favor, in its answer to Strausser's arbitration complaint.  **See** Segal's Petition to Vacate Arbitration Decision, 9/2/2014, Exhibit 26, Answer with New Matter, at 9.

Strausser argues, however, that based upon this Court's opinion, the only issues left unresolved upon remand were the amount of Strausser's counsel fees and whether the Redding Panel "needed additional information to complete its damages award."  Strausser's Brief at 13.  When Strausser withdrew its claim for counsel fees, and the Panel determined it did not need additional information to determine damages,[13] Strausser asserts the Redding Panel had "decided all issues from the original submission[,] … the arbitrators' jurisdiction was exhausted and the award was ripe for

_____

[12] We note that in a July 2014 letter to the Redding Panel requesting a conference, Segal listed several issues which it characterized as "unclear and unresolved."  Letter, 7/24/2014, at 1.  However, almost all of those issues concerned legal challenges to the panel's decision.  **See id.** at 1-3 (asserting, *inter alia*, certain claims were barred by res judicata or the statute of limitations).  As we will discuss *infra*, the mandate of the remand decision was clear and limited.  Segal was not entitled to re-litigate claims that were already decided.

[13] **See** Supplemental Opinion, 8/4/2014, at 4-5.

confirmation." Strausser's Brief at 15 (footnote omitted). Moreover, Strausser argues that Segal's claim for counsel fees was not authorized under the arbitration clause. We agree.

A review of the remand opinion reveals this Court did not intend for the Redding Panel to re-open the arbitration proceedings and re-litigate the issues it had already decided. Rather, the Court explained that the only issues still unresolved were the amount of Strausser's counsel fees and whether the Panel required Segal's profit per lot calculations to determine damages. Specifically, the Court opined:

> Strausser's claim for counsel fees is unresolved. Thus, pursuant to **Fastuca**, the Redding Panel's decision does not constitute a common law arbitration award. Our conclusion in this regard is bolstered by the footnote in the Majority Opinion. It is unclear exactly what the Redding Panel was contemplating when it noted, "In the event that the panel determines that it needs [Segal's] profit/lot to determine damages, the parties have agreed to present that evidence at a later phase of this proceeding...." [Segal's] Petition to Vacate Majority [Decision] and Opinion, and to Preclude Entry of Judgment Pending Resolution of Petition, 11/9/2012, Exhibit T, at n. 1. However, a reasonable interpretation of this footnote indicates that the Redding Panel must decide whether it needs [Segal's] "profit/lot to determine damages" and whether "a later phase" of arbitration is necessary.

**Strausser**, **supra**, 89 A.3d at 298-299. While this Court may not have clearly articulated its intent in the remand directive – "[o]n remand, the trial court shall remand the matter to the Redding Panel in order to allow the

- 21 -

panel to complete its work"[14] - a review of the entire opinion reveals the panel's limited directive. Thus, when Strausser withdrew its claim for counsel fees, and the Redding Panel Majority decided it did "not need any additional 'profit/lot [calculations] to determine damages[,]'" the panel had resolved all issues pending before it. Supplemental Opinion, 8/4/2014, at 4-5. The Redding Panel Majority, therefore, properly declared that the "earlier Award in the amount of $15,699,721 stands as the Final Award of this Panel." *Id.* at 5. Accordingly, we find the arbitration award entered following the remand by this Court was a final award, and Segal is entitled to no relief on this claim.

Similar to its last claim, Segal also contends the trial court improperly limited the scope of the arbitration panel on remand. In support of this assertion, Segal points to the following. After this Court filed its opinion on April 1, 2014, the trial court entered an order on May 23, 2014, which stated: "AND NOW, this 23rd day of May 2014, this matter is hereby REMANDED to the arbitration panel comprised of Edward Redding, Esquire, Walter Weir Jr., Esquire and Joel Scheer, Esquire for disposition of [Strausser's] outstanding claim for attorneys' fees." Order, 5/23/2014. Segal responded by seeking clarification of the court's May 23, 2014, order and the appointment of new arbitrators. Thereafter, on June 12, 2014, the

---

[14] *Strausser*, *supra*, 89 A.3d at 300.

trial court entered an order, clarifying its previous order, and stating that the matter would be remanded to the Redding Panel "'in order to allow the panel to complete its work,' consistent with the limited directives contained in the Superior Court of Pennsylvania's Order of April 1, 2014." Order, 6/12/2014.

Segal contends the trial court had no authority to, first, direct the Redding Panel to consider only the outstanding claim for counsel fees, and second, instruct the Panel to comply with the "limited directives" in this Court's Opinion. Segal's Brief at 50-51. Segal further argues the trial court's actions "resulted in significant prejudice," namely,

> [t]he Supplemental Opinion discloses that Arbitrators Redding and Weir were operating under the mistaken impression that this Court or the Trial Court somehow constrained the Redding Panel's ability on remand to consider issues other than: (1) awarding attorneys' fees to [Strausser]; and (2) the need for profit/lot information to properly calculate damages.

*Id.* at 51. Accordingly, Segal claims the award should be vacated.

In addressing this claim, the trial court stated:

> We believed that the Superior Court's remand was clear, specific, and required no interpretation. As we read the Superior Court's Order, it was specific as to the nature of the remand – there was no award addressing Strausser's claim for attorney's fees[.] … Thus, we issued no directive to the Redding Panel other than to comply with the Superior Court's directive to accept the remand.

Trial Court Opinion, 8/21/2015, at 12.

As we explained *supra*, we agree with the trial court's interpretation of the remand opinion. What Segal fails to acknowledge is that the Redding Panel Majority did not limit its scope of review based upon the trial court's

- 23 -

directives. Rather, the Majority looked to this Court's opinion, and determined the only unresolved issues were those involving Strausser's attorneys' fees and the method by which to calculate the damage award. *See* Supplemental Opinion, 8/4/2014, at 4. Accordingly, we reject Segal's contention that the trial court improperly limited the Redding Panel's authority on remand.

Next, Segal argues the trial court erred in denying its petition to vacate the arbitration award. Specifically, it contends the Redding Panel denied Segal's right to a hearing and failed to deliberate on all issues.

When considering a common law arbitration award, we must bear in mind our statutorily limited scope of review.

> Judicial review of a common law arbitration proceeding is prescribed by statute, under a provision of the Pennsylvania Judicial Code:
>
> ### § 7341. Common law arbitration
>
> The award of an arbitrator in a nonjudicial arbitration ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.
>
> 42 Pa.C.S. § 7341. In accordance with this provision, our scope of review is extremely narrow. "The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either." *Prudential Property and Cas. Ins. Co. v. Stein*, 453 Pa.Super. 227, 683 A.2d 683, 685 (1996). Neither we nor the trial court may retry the issues addressed in arbitration or review the tribunal's disposition of the merits of the case. Rather, we must confine our review to whether the appellant was deprived of a hearing or whether "fraud, misconduct, corruption or other irregularity"

tainted the award. The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by "clear, precise, and indubitable" evidence. *Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Assocs., Inc.*, 328 Pa.Super. 357, 477 A.2d 482, 485 (1984). In this context, "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *Id.* A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. *Paugh v. Nationwide Ins. Co.*, 278 Pa.Super. 108, 420 A.2d 452, 458 (1980).

*McKenna v. Sosso*, 745 A.2d 1, 4 (Pa. Super. 1999), *appeal denied*, 759 A.2d 924 (Pa. 2000). "A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." *Toll Naval Associates v. Chun-Fang Hsu*, 85 A.3d 521, 525 (Pa. Super. 2014) (citation omitted).

As noted above, Segal first contends the award must be vacated because the Redding Panel denied Segal a full and fair hearing on remand. Segal emphasizes it "requested a conference before [the p]anel to discuss open items on five separate occasions[,]" however, the panel did not respond to those requests, and instead, issued a supplemental opinion adopting its earlier award as final. Segal's Brief at 40. Segal asserts:

> Thus, [this] claim of error with regard to the Redding Panel's post-remand conduct is premised upon a procedural deficiency – the actual denial of a hearing, as opposed to such hearing's fullness or fairness – and has nothing to do with the merits of the controversy or the fact that Arbitrators Redding and Weir "agreed" with [Strausser].

*Id.* at 42-43.

Again, we find Segal is entitled to no relief. While the denial of a hearing is one of the few bases upon which a party may attack a common

- 25 -

law arbitration award, we conclude, here, Segal was **not** denied an arbitration hearing. Indeed, Segal does not contend the panel failed to conduct a hearing **before** the entry of the initial arbitration "award." Rather, Segal complains only about the denial of a hearing **upon remand**. However, as noted above, the remand order from this Court was limited to two issues, namely, the amount of Strausser's counsel fees and whether the panel required Segal's profit per lot calculations to determine damages. After Strausser withdrew its claim for attorneys' fees, and the Majority decided it did not need to conduct further damage calculations, it had "complete[d] its work," and there was no need for a hearing or telephone conference. **Strausser**, **supra**, 89 A.3d at 300. Accordingly, the trial court properly denied Segal's petition to vacate the award on this basis. **Compare Andrew v. CUNA Brokerage Servs., Inc.**, 976 A.2d 496, 498-499, 502-503 (2009) (arbitration panel entered award finding plaintiff's claims time-barred by statute of limitations after conducting only a pre-hearing telephone conference; Superior Court vacated award and remanded case, holding panel's failure to conduct a "hearing to consider evidence and testimony as to whether [plaintiff's] causes of action are timely" constituted "the denial of a full and fair hearing.").

Segal also contends the trial court erred in denying its motion to vacate the award because the Redding Panel failed to deliberate on all issues. **See** Segal's Brief at 43. In support of this claim, Segal points to Arbitrator Scheer's comments in his October 2012, dissent in which he

- 26 -

stated the Majority Opinion "was never distributed by the Chairperson for comment" and there was "no deliberation with respect to which party might be liable." Dissent, 10/10/2012, at 1, 3. Segal notes that Arbitrator Scheer made a similar comment in his supplemental dissent where he stated Arbitrator Weir circulated a draft supplemental opinion, which Arbitrator Redding joined without further deliberation. *See* Dissent to Supplemental Opinion, 8/8/2014, at 1. Accordingly, Segal asserts "Arbitrator Redding and Weir's exclusion of Arbitrator Scheer was a procedural irregularity that resulted in an unjust, inequitable, and unconscionable decision[.]" Segal's Brief at 46.

However, we find Segal has not established by "'clear, precise, and indubitable' evidence" an irregularity that "tainted the award." *McKenna*, *supra*, 745 A.2d at 4 (citation omitted). Arbitrator Scheer, in his original dissent, did not express that the arbitrators failed to deliberate **at all** on the issues. Rather, he stated the majority opinion was not distributed for comment before it was filed. *See* Dissent, 10/10/2012, at 1. As he explained in his supplemental dissent, after both he and Arbitrator Weir submitted proposed draft adjudications, Arbitrator Redding signed Arbitrator Weir's draft without requesting "further deliberations between the panel members, [or] further comment by the parties to discuss a final draft[.]" Dissent to Supplemental Opinion, 8/8/2014, at 2. This statement, however, does not establish that the parties did not discuss the issues. It simply indicates there was no further deliberations **after** the proposed drafts were

distributed.[15] ***Cf. Goeller v. Liberty Mutual Ins. Co.***, 568 A.2d 176, 178 (Pa. 1990) (reinstating the order of the trial court directing the parties to convene a new arbitration panel when "[t]he record indicate[d], and it [was] not disputed, that one of the members of the panel in this case was denied his opportunity to deliberate."). Accordingly, we find the trial court did not err or abuse its discretion when it denied Segal's petition to vacate the arbitration award.

In its last issue, Segal contends the trial court erred in denying its request for a hearing and discovery. Segal attached a rule to show cause to its petition to vacate the arbitration award in contemplation that the trial court would conduct an evidentiary hearing on its claims. Although the court executed the Rule and scheduled a hearing for December 15, 2014, it subsequently entered the order denying Segal's petition before the scheduled hearing. **See** Order, 12/8/2014. Segal asserts:

> [T]he Trial Court's failure to hold a hearing in this matter deprived [Segal] of [its] right to develop an evidentiary record concerning disputed issues of fact raised by the Petition to Vacate and [Strausser's] Responses thereto, including whether the parties to the Third Addendum intended to be bound by a decision made by only a majority of arbitrators."

Segal's Brief at 49.

---

[15] Perhaps, at that point, it was evident the arbitrators' views on the issues were so disparate that no compromise was possible.

Segal also complains the trial court would not permit it to conduct discovery on Arbitrator Redding's possible misconduct. Indeed, Segal notes that, in October of 2014, Arbitrator Redding "pled guilty to conspiracy to defraud financial institutions in connection with numerous real estate transactions." Segal's Brief at 20. It asserts this fact "underscored the fundamental premise of the Petition to Vacate, namely, that the individuals presiding over the arbitration did not carry out their duties in accordance with the law." *Id.* at 50. Segal argues the trial court prematurely rejected its claim without affording it "the opportunity to develop that argument through discovery." *Id.*

In its opinion, the trial court noted Segal's claim that the court denied it an opportunity "to make a record is disingenuous … [as Segal] had no evidence to proffer." Trial Court Opinion, 8/21/2015, at 17. It commented that during various hearings and court listings, Segal never appeared with witnesses or requested "to make an evidentiary presentation." *Id.* Furthermore, with respect to its denial of Segal's request for discovery, the court offered the following explanation:

> We feel compelled to note that [Segal has] been dancing around a claim that something nefarious occurred when the majority of the panel issued an award against [it]. However, there has been no proffer of fraud, misconduct or corruption.
>
> We have heard numerous presentations, generally repetitive, with regard to these claims. The only issues that have been developed are the following claims: (1) Two of the arbitrators, one appointed by Strausser (Weir) and the neutral arbitrator (Redding), improperly issued a majority award without the consent of the dissenting arbitrator, Scheer. (2) Significant

- 29 -

portions of the majority opinion are alleged to have been lifted or plagiarized from the Strausser Brief. (3) After the completion of the Redding Panel's work, Mr. Redding plead (sic) guilty in Federal court to fraud/theft; however, the conviction was wholly unrelated to the parties and the dispute.

None of these issues support an interference with the arbitration process. This nonjudicial arbitration process was contracted by the parties. These parties specifically sought to exclude this dispute from our jurisdiction. We understand that [Segal] strongly feel[s] as though the Redding Panel's decision was not supported by the record and erroneous. Unfortunately for [Segal], a weak work product or a mistaken determination of the factual or legal issues is not enough for Court intervention.

Based on the proffers made by [Segal], it was clear that the discovery was a fishing expedition and nothing more. Without a proffer supporting fraud, misconduct, or other irregularity causing an unconscionable award, we were unwilling to allow post-award discovery related to the entry of a common law arbitration award.

*Id.* at 15-16.

We find no error or abuse of discretion on the part of the trial court. Once again, Segal fails to acknowledge the very limited bases for judicial review of a common law arbitration award. *See McKenna*, *supra*, 745 A.2d at 4 (review of common law arbitration award limited to "whether the appellant was deprived of a hearing or whether 'fraud, misconduct, corruption or other irregularity' tainted the award.") (citation omitted).

We note Segal's petition to vacate was based on the following claims: (1) the award was rendered in a non-unanimous decision; (2) Segal was denied a hearing upon remand from this Court; (3) the arbitrators failed to deliberate on all issues; (4) the arbitrators failed to give full consideration to all of the evidence presented by Segal; and (5) Arbitrator Redding pled

guilty to federal crimes after the final award was entered. **See generally**, Petition to Vacate Arbitration Decision, 9/2/2014, and Addendum to Petition to Vacate, 11/3/2014. As we have determined *supra*, the first three arguments are without merit, and the court properly disposed of them without conducting a hearing. **See supra** at 13-19 (non-unanimous award was proper), 25-26 (arbitrators were not required to conduct a hearing upon remand); and 26-28 (arbitrators properly deliberated on remaining issues upon remand). Further, Segal's contention that the arbitrators failed to give full consideration to the evidence it presented seeks to undermine the factual and legal basis of the award, which is not a proper reason upon which to vacate a common law arbitration award. It is well settled that "arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either." **McKenna**, **supra**, 745 A.2d at 4 (citation omitted).

Consequently, Segal's only basis for vacating the award which could have, arguably, supported its request for a hearing and discovery, was its claim that Arbitrator Redding was unqualified to serve on the panel because he was under federal investigation for fraud. Segal contends this fact demonstrated an "irregularity" in the arbitration process, and it should have

been permitted to "develop that argument through discovery."[16] Segal's Brief at 50.

We find the trial court properly denied Segal's request to conduct discovery, and agree its application was nothing more than a "fishing expedition." Trial Court Opinion, 8/21/2015, at 16. There is no allegation that Redding's criminal activities were, in any way, connected to the instant arbitration hearing or the parties herein, or tainted the proceedings in such a way as to disadvantage Segal. In fact, Segal does not explain in its brief what it hoped to uncover through discovery, save for "the opportunity to develop"[17] its argument, nor does it state what evidence it intended to present during an evidentiary hearing. Accordingly, we find no basis to disturb the ruling of the trial court.

Judgment affirmed at Docket No. 1251 EDA 2015. Appeals at Docket Nos. 176 EDA 2015 and 761 EDA 2015 are dismissed as moot.

---

[16] We note that Segal takes care in its brief not to allege the arbitration award was based on fraud. Indeed, as the trial court explained during the November 7, 2014, hearing, Segal did not allege fraud in its petition to vacate. N.T., 11/7/2014, at 10. Further, the court commented: "There has to be, at the very least, clear evidence of fraud or bias in order to entitle somebody to drag a post-award proceeding out, delay it, and take discovery." *Id.* at 9. Here, there has been no evidence at all that the award was fraudulently obtained by Strausser.

[17] Segal's Brief at 50.

Judgment Entered.

_____

Joseph D. Seletyn, Esc.
Prothonotary


Date: <u>7/6/2016</u>